**United States District Court**
For the Northern District of California

**E-FILED on** ___6/8/12___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANTOINE SMITH,

        Petitioner,

        v.

RICHARD KIRKLAND, Warden

        Respondent.

No. C-05-05168 RMW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

**[Re Docket No. 1]**

        Petitioner Antoine Smith ("petitioner"), currently serving a sentence of sixty-five years to life following a conviction for first-degree murder, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner seeks habeas relief on the ground that the trial judge's exclusion of potentially exculpatory hearsay testimony resulted in a due process violation. The court has reviewed the briefs and the underlying record. For the reasons stated below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

### A. Factual Background

        This case arises from a street fight between two women, Sharika Jefferson ("Jefferson") and Latosha Stewart ("Stewart"), which led in turn to a confrontation between Kendrick Dunbar, Jefferson's boyfriend ("Dunbar" or "victim") and petitioner, Stewart's brother. Petitioner admits that

United States District Court
For the Northern District of California

1  he shot and killed the victim during the confrontation, but contends that he acted out of panic or in

2  self-defense and that he did not intend to kill the victim, much less premeditate a murder.[1]

3      For several months, conflict had been building between Jefferson and a group of women that

4  included Stewart.  The dispute had already broken out in at least two physical fights, and it came to a

5  head again on the day of the shooting.  By that evening, the two women were preparing themselves

6  for a one-on-one street fight.  Friends and relatives of Jefferson, including Dunbar, gathered to

7  support her, and Stewart called petitioner and asked him to come to her aid.

8      On his way to meeting Stewart, petitioner picked up Vincent Victory ("Victory") and another

9  friend.  Petitioner and his friends met up with Stewart, and petitioner confirmed with Dunbar and

10  Stewart that the women were going to fight.  Petitioner then told Stewart not to start fighting until he

11  returned and he drove off.  Petitioner testified that he and his friends went to Victory's house so that

12  Victory could change out of slippers and into shoes in case a broader fight broke out.  When

13  petitioner and his friends returned, a crowd had gathered in the street.  Petitioner testified that he ran

14  toward the crowd, but Victory yelled for him to stop and handed him a gun.  Petitioner took the gun

15  and put it in his pocket.  The men caught up with the crowd at or soon after the time Jefferson and

16  Stewart began fighting.

17      At one point during the fight, Dunbar and petitioner engaged in a shoving match and

18  exchanged angry words.  Dunbar then raised his fists into a fighting stance.  At this point in the

19  narrative, the witnesses' testimony diverged.

20      The prosecution's percipient witnesses testified that after Dunbar raised his fists, petitioner

21  pulled out a gun, aimed it at Dunbar's chest, and fired.  Two witnesses testified that after petitioner

22  pulled out the gun but before he fired, Dunbar adopted a surrender stance with his hands raised to

23  shoulder level, palms facing out.  Several witnesses testified that Dunbar immediately fell to the

24  ground after the first shot was fired; Jefferson testified that Dunbar fell forward after the first shot

25  and reached for petitioner's gun to try to block it.  The witnesses agreed that between three and

26

27

28  _____

[1] As petitioner is not challenging any specific factual findings of the state court, the following
factual background comes primarily from the state court of appeal's opinion. Dkt. No. 4 at 5-8.

1  seven seconds after the first shot had been fired, petitioner walked up to or stood over Dunbar as he

2  lay on his back on the ground and fired a second shot into Dunbar's chest.

3       In his own defense, petitioner testified that Dunbar had punched Stewart in the head,

4  knocking her to the ground.  Petitioner then shoved Dunbar and Dunbar "roared up" at him saying:

5  "You want some of this?"  They exchanged more angry words and Dunbar continued to charge at

6  petitioner.  Petitioner backed up and pulled out his gun because he was nervous.  Dunbar said, "Are

7  you going to pull a gun out at me, little nigger? I take that from your little ass," and he reached for

8  the gun.  Petitioner fired because he was scared and thought Dunbar was going to take his gun, but

9  he was not aiming the gun at Dunbar's chest.  Petitioner did not know that the first shot had hit

10  Dunbar.  Dunbar was still moving toward petitioner as he was falling down, and petitioner fired a

11  second shot a couple of seconds after the first shot.  He fired again because Dunbar was still coming

12  at him and he was nervous; he was not thinking about killing Dunbar.  Dunbar fell to the ground and

13  petitioner stood by his body for a few moments before he walked over to Jefferson and Stewart.

14       In closing, the prosecutor asked the jury to find that petitioner was guilty of "deliberate and

15  premeditated" murder.  State Court Reporter's Transcript ("RT") at 1613.  He characterized

16  petitioner's testimony that he went to Victory's house before the fight to pick up a pair of shoes as

17  "absurd," and argued that he had in fact returned to the house to get a gun.  RT at 1601.  The

18  prosecution further argued that even if petitioner got the gun from Victory after they arrived at the

19  scene of the fight, premeditation was proven by evidence that: (1) petitioner accepted the gun from

20  Victory, (2) he pulled the gun from his pocket during the fight; and (3) he fired a second shot at the

21  victim several seconds after firing the first.  *See* RT at 1602-03; 1614-16.

22       On December 20, 2002, a jury in the Superior Court of the Alameda County convicted

23  petitioner of first degree murder and found true an allegation that petitioner personally and

24  intentionally used a firearm to kill the victim.  Petitioner was sentenced to a total of 65 years eight

25  months to life, and restitution fines were imposed.  Respondent Ex. 1 at 517-18.

26       On July 8, 2004, the California Court of Appeal affirmed the judgement in an unpublished

27  opinion.  Dkt. No. 4 at 5-16; Respondent Ex. 6.  The California Supreme Court denied review on

28  September 15, 2004.  Respondent Ex. 8.  On March 21, 2007, petitioner filed a petition for a writ of

**United States District Court**
For the Northern District of California

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY—No. C-05-05168 RMW
WW

3

1   habeas corpus in the California Supreme Court which was denied on August 8, 2007.  Respondent

2   Exs. 9 & 10.

3   **B.      Petitioner's Federal Habeas Claim**

4          On December 13, 2005, petitioner filed a petition for a writ of habeas corpus in this court

5   under 28 U.S.C. § 2254.  His claim arises from the trial court's exclusion of the testimony of

6   petitioner's mother, Carol Stewart ("Mrs. Stewart"), indicating that Victory had told her two weeks

7   before the trial that he had handed petitioner the gun "while they were out of the car."  RT 1328.

8   Petitioner had previously subpoenaed Victory to testify, but Victory invoked his Fifth Amendment

9   right to remain silent.  Petitioner argued that although his mother's testimony included hearsay, it

10  should be admitted as a statement against Victory's penal interest.  After holding a comprehensive

11  hearing outside the presence of the jury, the trial court excluded the evidence.  RT at 1323-36.

12  Petitioner argues that the excluded testimony tends to negate the *mens rea* of intent, deliberation,

13  and premeditation, which are necessary elements for a conviction of first-degree murder.  Petition at

14  4.  He claims that the trial court's exclusion of the testimony violated his due process right

15  guaranteed by the Fourteenth Amendment to the United States Constitution, and resulted in a

16  wrongful conviction.  *Id.*

17         On October 11, 2006, petitioner filed a document titled "Citation of New Authority,"

18  bringing to the court's attention *Holmes v. South Carolina*, 547 U.S. 319 (2006).  *See* Dkt. No. 4.

19  The court issued an order to show cause on February 11, 2010.  *See* Dkt. No. 16.  Respondent filed

20  an answer on August 11, 2010.  *See* Dkt. No. 21.  To date, petitioner has not filed a traverse.

21                                      **II.  ANALYSIS**

22  **A.      Legal Standard**

23         A court may grant a petition for writ of habeas corpus "in behalf of a person in custody

24  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

25  Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  The court may grant

26  the writ only if the state court's ruling "resulted in a decision that was contrary to, or involved an

27  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

28  the United States" or was "based on an unreasonable determination of the facts in light of the

    evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

United States District Court
For the Northern District of California

1  For a state court's decision to be contrary to clearly established federal law, it must apply a
2  rule that contradicts the governing law set forth in Supreme Court cases, or confront a set of facts
3  that are materially indistinguishable from a Supreme Court decision and nevertheless arrive at a
4  different result. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[C]learly established Federal law under §
5  2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time
6  the state court renders its decision." *Andrade*, 538 U.S. at 71-72. "Avoiding [a 'contrary' to error]
7  does not require citation . . . [or] awareness of [Supreme Court] cases, so long as neither the
8  *reasoning* nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8
9  (emphasis added). On the other hand, mistakes in a state court's reasoning or in "predicate
10 decisions," such as use of the wrong legal rule or framework, do constitute error under the "contrary
11 to" prong of § 2254(d)(1). *Frantz v. Hazey*, 533 F.3d 724, 734 (9th Cir. 2008).

12 A state court decision is an unreasonable application of clearly established federal law "if the
13 state court identifies the correct governing legal principle . . . but unreasonably applies that principle
14 to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The court cannot
15 grant a habeas petition as being an "unreasonable application" of federal law merely because, in its
16 opinion, the law was incorrectly applied in a particular case. *Bell v. Cone*, 535 U.S. 685, 698-99
17 (2002). Rather, the state court's application of federal law must be "objectively unreasonable" in
18 order to justify granting the petition. *Id.* The review of state court decisions is highly deferential.
19 *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

20 In determining whether the state court's decision is contrary to, or involved an unreasonable
21 application of, clearly established federal law, a federal court looks to the decision of the highest
22 state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*,
23 217 F.3d 663, 669 n. 7 (9th Cir. 2000).

### 1.     Exclusion of Hearsay Testimony

25 Trial judges who are called upon to make ordinary evidentiary rulings are generally given
26 "wide latitude" to exclude evidence from criminal trials. *Crane v. Kentucky*, 476 U.S. 683, 689-90
27 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)) (internal quotations omitted). This
28 latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth

Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the

**United States District Court**
For the Northern District of California

1   Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete

2   defense.'"  *Id.* at 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations

3   omitted).  This right is abridged by evidence rules that "infring[e] upon a weighty interest of the

4   accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"

5   *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (finding unconstitutional a state law evidence

6   rule preventing the defendant from introduce proof of third-party guilt if the prosecution had

7   introduced forensic evidence that, if believed, strongly supported a guilty verdict) (internal citations

8   omitted).[2]  On the other hand, evidence may be excluded without violating due process if "its

9   probative value is outweighed by certain other factors such as unfair prejudice, confusion of the

10  issues, or potential to mislead the jury."  *Id.* at 326; *accord Crane*, 476 U.S. 689-90 ("[T]he

11  Constitution leaves to the judges . . .'wide latitude' to exclude evidence that is 'repetitive . . . only

12  marginally relevant' or poses an undue risk of 'harassment, prejudice, or confusion of the issues.'")

13  (quoting *Delaware*, 475 U.S. at 679).  Erroneous rulings of the trial court are subject to harmless

14  error analysis, *Crane*, 476 U.S. at 691, meaning that a petitioner is entitled to habeas relief only if

15  the error has a "substantial and injurious effect or influence in determining the jury's verdict."

16  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

17       The state court of appeal's holding that the trial court did not abuse its discretion by

18  excluding Mrs. Stewart's testimony is not contrary to, or an unreasonable application of, clearly

19  established federal law.  The hearsay rule is long grounded in the notion that untrustworthy evidence

20  should not be presented to the triers of fact.  *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).

21  Thus, exceptions to allow admission of hearsay statements, such as declarations against interest,

22  only apply to statements made under circumstances that tend to assure reliability and thereby

23  compensate for the absence of the oath and opportunity for cross-examination.  *Chambers*, 410 U.S.

24

25  [2]  Respondent argues that *Holmes* does not impact petitioner's application for relief because *Holmes*
26  was decided after the state court's decision was final.  Dkt. No. 21-1 at 8-9; *Lockyer v. Andrade*, 538
    U.S. 63, 71-72 (2002) (the relevant clearly established law is the governing legal principle "set forth
27  by the Supreme Court at the time the state court renders its decision.").  However, this court finds
    that *Holmes* is relevant because it "merely clarified" already existing law at the time of petitioner's
28  conviction, rather than changing the law.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001) (finding
    violation of petitioner's due process rights based on state supreme court decision issued after
    conviction that "merely clarified" state law at the time of the conviction).

United States District Court
For the Northern District of California

1    at 298-99.  The state court correctly recognized that even assuming that Victory could have been

2    convicted of a crime based on evidence that he handed petitioner a gun as they approached the street

3    fight, his out-of-court statement was admissible only if it was sufficiently reliable or trustworthy.

4    Dkt. No. 4 at 4; *see also Chambers*, 410 U.S. at 302 (holding that the third-party confession

5    testimony at issue was well within the basic rationale of the exception for declarations against

6    interest because it bore "persuasive assurances of trustworthiness").  The state court concluded that

7    Victory's statement was not reliable because it "was made in the context of trying to convince

8    [petitioner's] mother that [Victory] had been a loyal friend to her son, who faced the prospect of

9    spending the rest of his life in prison."  Dkt. No. 4 at 6.  Therefore, in affirming the trial court's

10   exclusion of this evidence, the state court of appeal identified the correct legal principles and applied

11   those principles to petitioner's case in a manner that was not objectively unreasonable.

12       Petitioner compares his case to *Chambers*, in which the Supreme Court held that a trial

13   court's exclusion of a third-party confession in a murder case under the hearsay rule violated the

14   defendant's fundamental right to present witness in his own defense.  *Chambers*, 410 U.S. at 300-02.

15   In *Chambers*, however, the Court found that the hearsay statements were originally made and

16   subsequently offered at trial under circumstances that "provided considerable assurance of their

17   reliability."  *Id.*  The Court emphasized that (1) the statement had been made spontaneously to a

18   close acquaintance shortly after the murder; (2) it was corroborated by other evidence in the case;

19   (3) it was self-incriminatory and "unquestionably against interest;" (4) the declarant had been

20   present in the courtroom, under oath and able to be cross-examined; and (5) the statement was

21   critical to the defense.  *Id.*

22       By contrast, Victory made his statement to Mrs. Stewart over a year after the murder.

23   Respondent Ex. 1 at 181, 370.  The statement was not corroborated by any evidence or witness other

24   than petitioner himself.  Furthermore, given the circumstances of the conversation between Victory

25   and Mrs. Stewart, Victory's statement was not clearly against interest because he had an incentive to

26   embellish his role in the incident in order to prove his loyalty to petitioner in front of petitioner's

27   mother, whom Victory had known for years.  And since Victory had invoked his Fifth Amendment

28   right to refuse to answer questions regarding this statement, he was obviously unavailable for cross-

1   examination.  Thus, it was not unreasonable for the state appellate court to conclude that Victory's

2   statement was unreliable, and that the trial court had not abused its discretion in excluding Mrs.

3   Stewart's testimony.

4          Petitioner argues that under *Holmes*, even if a judge believes that the defense evidence itself

5   is not reliable, excluding evidence that has "a logical connection to the central issues" of the case is

6   unconstitutional.  Dkt. No. 4 at 3; *Holmes*, 547 U.S. at 330.  The court disagrees.  *Holmes* reaffirms

7   the balancing test that a trial judge may properly apply in admitting or excluding third-party guilt

8   evidence, holding that such evidence may be excluded if its probative value is outweighed by the

9   potential adverse effects of admission.  *Holmes*, 547 U.S. at 326.  That the evidence bears "a logical

10  connection to the central issues" of the case only pertains to the "probative value" part of the test.

11  *Id.* at 326, 330.  Such evidence may still be excluded without violating due process if a judge finds

12  countervailing adverse effects of admission; for example, when a hearsay statement lacks

13  trustworthiness and admission might mislead the jury.  Accordingly, the state appellate court's

14  holding that the trial court had not abused its discretion is neither contrary to or involves an

15  unreasonable application of the high court's teaching in *Holmes.*

16         Finally, as the state court of appeal reasonably concluded, even if the trial court had abused

17  its discretion in excluding the testimony, the error was harmless.  While the prosecutor asked the

18  jury to disbelieve petitioner's story that he returned to Victory's house to get a pair of shoes, he did

19  not rely solely on the argument that petitioner went to the house to get a gun to demonstrate

20  premeditation.  Indeed, the prosecution specifically argued that regardless of *when* petitioner

21  obtained the gun, premeditation was proven by the undisputed facts that petitioner accepted the gun

22  from Victory, pulled the gun from his pocket during the fight, and fired a second shot at the victim

23  several seconds after firing the first.  *See* RT at 1602-03; 1614-16.  Furthermore, even had Mrs.

24  Stewart been allowed to testify, it is unlikely the jury would have given her testimony much weight:

25  the fact that she was petitioner's mother and that Victory had a motive to exaggerate his role in the

26  shooting when speaking to her would have made her testimony inherently suspect and subject to

27  impeachment on cross-examination.  Thus, exclusion of Victory's statement did not have a

28

**United States District Court**
For the Northern District of California

1   "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at

2   637.

3               **2.      Application of Wrong Legal Standard to Determine Due Process Violation**

4               Petitioner further contends that the state court applied the wrong legal standard in concluding

5   that the exclusion of Mrs. Stewart's testimony did not violate petitioner's due process rights. Dkt.

6   No. 2 at 7. In a section of the opinion entitled "Federal Due Process Claim," the state court of

7   appeal stated:

8           Because California Evidence Code provides, in appropriate circumstances, for the
            admission of hearsay statements that are against the declarant's penal interest and
9           because the trial court here fully considered [petitioner's] proffered evidence to
            determine whether it qualified under that exception, [petitioner's] federal due process
10          rights were not violated by the exclusion of that evidence.

11  Dkt. No. 4 at 15-16. Taken literally, this language seems to suggest that so long as an evidentiary

12  rule by its own terms does not violate due process, and a trial court has exercised discretion under

13  that rule, there can be no due process violation. This position is further evidenced by the state court

14  of appeal's reliance on *People v. Cudjo*, 6 Cal. 4th 585, 611 (1993) and *People v. Hall*, 41 Cal. 3d

15  826, 834 (1986), which held that a trial court's exercise of discretion under ordinary rules of

16  evidence, even if erroneous, does not impermissibly infringe on a defendant's right to present a

17  defense. Dkt. No. 4 at 15.

18              This court agrees with petitioner that this part of the state court of appeal opinion, standing

19  alone, lacks a constitutional basis. Although the Supreme Court has acknowledged "its traditional

20  reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts,"

21  *Crane* makes it clear that erroneous evidentiary rulings may indeed deprive defendants of their

22  fundamental right to a fair opportunity to present a defense. *Crane*, 476 U.S. at 687-89; *see also*

23  *Chambers*, 410 U.S. 284 (holding that a trial court's discretionary decision to reject certain

24  exculpatory testimony under the hearsay rule infringed the accused's constitutional right to present

25  witness in his own defense). Due process violations happen when "competent, reliable evidence"

26  bearing on central issues of the case is excluded in the absence of any valid state justification.

27  *Crane*, 476 U.S. at 690. Therefore, the mere fact that the trial court has exercised discretion under

28

United States District Court
For the Northern District of California

1  the hearsay rule to exclude Mrs. Stewart's testimony is neither a sufficient ground nor a correct legal

2  standard under which the state court may conclude that no due process violation has occurred.

3      That said, the court finds that even under *de novo* review, petitioner is not entitled to habeas

4  relief. *See Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2007) (holding that courts may not grant

5  habeas relief simply because of § 2254(d)(1) error and that, if there is such error, courts must decide

6  the habeas petition by considering *de novo* the constitutional issues raised). As discussed above, the

7  potential adverse effect of admitting Mrs. Stewart's testimony outweighed its limited probative

8  value. Excluding Mrs. Stewart's testimony was proper because Victory's statement lacked

9  trustworthiness, and even if the exclusion was erroneous, the error was harmless. In short, the state

10 court of appeal's bottom line was right–petitioner's conviction was not infected by constitutional

11 error and was properly affirmed. Therefore, this court may not grant habeas relief under § 2254.

12                    **III. CERTIFICATE OF APPEALABILITY**

13      The federal rules governing habeas cases brought by state prisoners require a district court

14 that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See*

15 Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009). For the

16 reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it

17 debatable whether the petition states a valid claim of the denial of a constitutional right [or] that

18 jurists of reason would find it debatable whether the district court was correct in its procedural

19 ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is denied.

20                              **IV. ORDER**

21      For the foregoing reasons, the petition for writ of habeas corpus is denied and a certificate of

22 appealability will not be issued.

23

24 DATED:  ___June 8, 2012___                    *Ronald M. Whyte*

25                                               RONALD M. WHYTE
                                                 United States District Judge
26

27

28